IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA

    vs                        4:07CR00308-WRW

HAROLD KELLEY

### CLERK'S MINUTES - CHANGE OF PLEA

On April 20, 2010, the above named defendant appeared in person before the Honorable Bill Wilson, United States District Judge, with Larry Jarrett, counsel retained by the defendant, and Jim Wyatt (stand-by counsel appointed by the Court), and said defendant stated in open court that he desired to enter a plea of guilty to the contempt charge.

After the defendant was duly sworn, the Court made inquiry as to guilt. The Court, being satisfied there was a factual basis for the plea, accepted the plea of guilty and found the defendant guilty as charged.

WHEREUPON:

( X )   The Court proceeded to pronounce sentence:   24 MONTHS to run consecutively to 4:06CR00082-01-JLH .

( X )   The defendant was remanded into the custody of the U.S. Marshal until.

Court Reporter -  C. Newburg                        Begin:2:40 p.m.
Courtroom Deputy -  M. Johnson                End:2:55 p.m.

**Court Exhibit: Stipulated Facts**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 4:07CR00308 WRW |
| | ) | |
| JACKIE PORCHAY | ) | |
| HAROLD KELLEY | | CONTEMNOR |

## STIPULATION OF FACTS REGARDING CONTEMPT NOTICE
## AGAINST HAROLD KELLEY

The United States of America, by and through Jane W. Duke, United States Attorney

for the Eastern District of Arkansas, and Patrick Harris, Assistant United States Attorney, and

Harold Kelley, by and through his counsel, Larry Jarrett, stipulate to the following facts:

1.    On March 8, 2006, Harold Kelley was indicted along with other co-defendants

in the case of *United States v. Harold Kelley*, case No. 4:06CR00082 JLH.  Pursuant to a plea

agreement entered into with the United States, Kelley pled guilty on February 13, 2007 to one

count of conspiracy to distribute cocaine in violation of Title 21, U.S.C. § 846.  Under the

terms of Kelley's plea agreement, he waived any Fifth Amendment privilege against self-

incrimination, and agreed to cooperate with the United States in its continued prosecution of

others.  Attached is the plea agreement of Harold Kelley.

2    Pursuant to the plea agreement, Harold Kelley was debriefed by law enforcement

agents.

3    On June 22, 2007, Kelley was sentenced to 170 months imprisonment, five years

of supervised release, and $100 special assessment.

4.   On October 3, 2007, a grand jury for the Eastern District of Arkansas returned an indictment against Jackie Porchay and Michelle McBride in case No. 4:07CR00308 WRW. The indictment charged Porchay with one count of conspiracy to possess with intent to distribute cocaine in violation of Title 21, U.S.C. § 846, one count of conspiracy to commit money laundering in violation of Title 18, U.S.C. § 1956(h), and six counts of money laundering in violation of in violation of Title 18, U.S.C. § 1956(a)(1)(B)(i).

5.   On December 10, 2009, defendant Porchay's trial began with her defense being a denial of any involvement in the drug and money laundering activities for which she was charged.

6.   On December 15, 2009, Harold Kelley was lawfully brought before the Court as a witness for the United States of America to offer testimony in this case.  Prior to being brought in to court, Kelley, through his attorney who is also the attorney for Porchay, stated that he refused to testify.  When Kelley was brought in to Court and placed under oath, Kelley asserted his rights under the Fifth Amendment and refused to testify.  Kelley refused to answer questions about matters including his name, whether he knew the defendant, his guilty plea to the drug conspiracy, who his co-conspirators were, and other matters material to the case against the defendant.  Finding that Harold Kelley had no Fifth Amendment privilege against self-incrimination to the questions asked, the Court ordered Kelley to provide testimony in this case and cautioned Kelley that refusal to testify could result in his being held in contempt of court.  Despite this Oder and warning, Harold Kelley continued

2

in his refusal to testify.  Attached is the transcript involving Harold Kelley at the Porchay trial.

7.   On December 16, 2009, defendant Porchay was convicted by the jury of all remaining counts in the Indictment.

By their signatures below, the parties stipulate to the above facts.

HAROLD KELLEY
Defendant

LARRY JARRETT
Attorney for Defendant

JANE W. DUKE
United States Attorney

FILED
IN OPEN COURT

FEB 13 2007

U.S. DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA        )
                                )
v.                              )        No. 4:06CR00082 - JLH
                                )
HAROLD KELLEY                   )

### PLEA AGREEMENT

The United States Attorney for the Eastern District of Arkansas, Tim Griffin, by and through Angela Jegley, Assistant United States Attorney, and HAROLD KELLEY, defendant, represented by the undersigned counsel, hereby agree to the following terms and conditions in connection with the above referenced proceedings.

1.    **GUILTY PLEA**:  The defendant will enter a plea of guilty to a violation of Title 21, United States Code, Section 846, as set forth in Count One of the Indictment.  The United States agrees to move for dismissal of the remaining counts against the defendant in this matter upon acceptance of the guilty plea.

2.    **ELEMENTS OF THE CRIME**:  The parties agree the elements of the offense to which the defendant will plead guilty are:

        a. In or about 2004 through in or about July 2006, two or more persons reached an agreement or came to understanding to commit a drug trafficking offense;

        b. The defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at


GOVERNMENT
EXHIBIT

182

some time later while it was still in effect;
and

c. At the time the defendant joined in the
agreement or understanding he knew the purpose
of the agreement or understanding.

The defendant agrees that he is guilty of the offense charged
and each of these elements is true.

3.   **PENALTIES:**

A. **STATUTORY PENALTIES:**  The penalty for the charge set
forth in Count One is not less than 10 years imprisonment and not
more than life in prison.

B. **SUPERVISED RELEASE:**  Supervised release is a period
of time following imprisonment during which defendant will be
subject to various restrictions and requirements.  Defendant
understands that if defendant violates one or more of the
conditions of any supervised release imposed, the defendant may be
returned to prison for all or part of the term of supervised
release, which could result in defendant serving a total term of
imprisonment greater than the statutory maximum stated above.

4.   **WAIVERS:**

The defendant acknowledges that he has been advised of and
fully understands the nature of the charges to which the plea is
offered, the mandatory minimum penalty provided by law, if any, and
the maximum possible penalty provided by law.   The defendant

2

further understands that by entering into this Agreement, he is waiving certain constitutional rights, including, without limitation, the following:

(a)  The right to plead not guilty or to persist in that plea if it has already been made, and the right to a speedy and public trial before a jury;

(b)  The right to be presumed innocent and to have the burden of proof placed on the United States to establish guilt beyond a reasonable doubt;

(c)  The right to confront and cross examine witnesses;

(d)  The right to testify in his own behalf if the defendant so chooses, or, the right to remain silent and not be compelled to testify, and to have that choice not used against the defendant;

(e)  The right to call witnesses and to require those witnesses to appear by issuing subpoenas;

(f)  Even after a plea of guilty, a Fifth Amendment right against self-incrimination as to some matters relevant to the defendant's own sentencing.

5.  COOPERATION/SUBSTANTIAL ASSISTANCE:

A.  COOPERATION: The defendant agrees to fully cooperate with the United States as follows:

(1)  To truthfully disclose all information and knowledge regarding any other criminal conduct in

3

Arkansas and elsewhere by the defendant and any and all other persons;

(2) To testify before any grand and/or petit jury as a witness for the United States when deemed appropriate by the United States;

(3) To be available for interview upon reasonable request;

(4) To submit to polygraph examinations if requested by the United States.

B. **SENTENCE REDUCTION FOR SUBSTANTIAL ASSISTANCE:**

(1) The United States will inform the sentencing court of the defendant's cooperation if the defendant truthfully and fully performs the defendant's part of this Agreement.

(2) If, in the sole and absolute discretion of the United States, the defendant's cooperation constitutes substantial assistance within the meaning of the Sentencing Guidelines, the United States will make a motion to the Court for a sentence reduction.

(3) If the United States determines that a motion for sentence reduction should be made, the extent of the requested departure will be at the sole and absolute discretion of the United States. The defendant understands that in no event will any requested departure exceed 50% of the low end of the applicable guideline range.

4

(4) Any such motion for sentence reduction will be filed pursuant to Section 5K1.1 of the Sentencing Guidelines if cooperation is completed prior to sentencing. If cooperation is not completed prior to sentencing, such motion will be filed pursuant to Federal Rule of Criminal Procedure 35, when cooperation is completed.

(5) The defendant understands that this Agreement confers no right upon the defendant to require that the United States make a motion for sentence reduction and confers no right or remedy in favor of the defendant.in the event that the United States determines that no such motion should be filed. Additionally, the defendant understands that, if a motion for sentence reduction is filed, the defendant may not, directly or indirectly through another person or party, seek a reduction greater than that requested by the United States.

(6) The defendant further understands and agrees that the defendant may not, directly or indirectly through another person, seek any reduction of sentence or other favorable sentencing considerations based on cooperation offered or provided in the absence of a motion by the United States.

(7) The parties understand and agree that, upon filing of such a motion by the United States, the decision to grant a reduction, and the amount of any reduction ultimately granted, is solely within the discretion of the District Court.

5

C.    **LIMITATION ON USE OF INFORMATION**: It is the intent of the United States and the defendant that this Agreement confer upon the defendant full protection afforded by use immunity under the laws of the United States, including that no information provided by the defendant pursuant to or in reliance on this Agreement may be used against the defendant under the Sentencing Guidelines to the defendant's detriment except as provided in Section 1B1.8 of the Sentencing Guidelines.

6.    **STIPULATIONS**:    The United States and the defendant stipulate to the following:

A.    BASE OFFENSE LEVEL AGREEMENT

The parties stipulation that he is responsible for at least 15 kilograms of cocaine hydrochloride but less than 50 kilograms which is a level 34.

B.    The defendant is eligible for a 3 point reduction for acceptance of responsibility.

The parties understand that the Court is not bound by these stipulations. The defendant further understands that if the Court does not accept the stipulations, the defendant is not entitled to withdraw the guilty plea or otherwise be released from defendant's obligations under this Agreement.

7.    **SENTENCING GUIDELINES**: It is specifically understood by the defendant that the Sentencing Guidelines are not mandatory but are advisory, and that the Court is to consult them in determining

**6**

the appropriate sentence. The defendant understands that the determination of the applicability of the Guidelines and of the appropriate sentence will be made by the Court.  The defendant is aware that any estimate of the probable sentencing range under the Sentencing Guidelines that the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is merely a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court.  The United States makes no promise or representation concerning what sentence the defendant will receive and the defendant cannot withdraw a guilty plea, or otherwise avoid the defendant's obligations under this Agreement, based upon the actual sentence imposed by the Court.  The parties understand and agree that if the guideline range is greater or less than the defendant or the United States expected it to be, and/or the sentence imposed by the Court is greater or lesser than anticipated, neither the defendant nor the United States will be allowed to withdraw, nor request withdrawal of, the guilty plea, nor be excused from any obligation under this Agreement.

8.   **ALLOCUTION:**   The United States reserves the right to bring any and all facts which it believes are appropriate to the attention of the Court.

9.   **COOPERATION IN THE SENTENCING PROCESS:**

7

A.  The defendant agrees to truthfully provide all information to the Probation Office as is needed for preparation of the pre-sentence report, including, but not limited to, criminal history information.

B.  The defendant shall not assert any Fifth Amendment privilege arguably entitling him/her to withhold information relevant to sentencing from the Court, the Probation Office or the United States.  The sole exception to the immediately foregoing is where the defendant has reasonable cause to believe that a direct response would be self-incriminating (either support a separate conviction or provide a link in the chain of evidence leading to a separate conviction).  Such an instance requires a substantial and real and not a trifling or imaginary hazard of separate criminal prosecution.  The fact that a direct response may lead to the calculation of a higher guideline range specifically does not constitute self-incrimination nor does it warrant the assertion of a Fifth Amendment privilege.

C. The defendant understands that deliberate withholding of non-incriminating information during the pre-sentence process may constitute obstruction of justice, failure to accept responsibility, or both.

D. The defendant shall voluntarily provide a complete and truthful written accounting of the defendant's criminal history to the Probation Office.

8

E. The defendant understands and acknowledges that the
defendant's obligation of disclosure regarding criminal history
is not limited to arrests and convictions reported in computer
databases, but requires the defendant to disclose all arrests
and/or convictions, including any juvenile matters, regardless of
whether the defendant believes the arrest/conviction counts under
the Sentencing Guidelines.

F. The defendant agrees to execute all waivers necessary for
the preparation of the pre-sentence report.

G. The defendant is required to comply with these
obligations no later than the expiration of the date on which
objections to the pre-sentence report are due.

10. **FINANCIAL MATTERS**:

A. **FINANCIAL STATEMENT**: The defendant agrees to fully and
truthfully complete a Financial Statement provided by the United
States Probation Office.

B. **FINES**: The defendant understands that unless the Court
determines that the defendant is financially unable to pay a
fine, the Court must impose a fine pursuant to the Sentencing
Reform Act of 1984.

C. **SPECIAL PENALTY ASSESSMENT**: The defendant agrees to
pay to the United States a special assessment of $100.00 per
count, as required by Title 18, United States Code, Section 3013.
This special assessment is to be paid by bank cashier's check or

9

money order as directed by the Court. Cashier's checks or money
orders should be made payable to "Clerk, United States District
Court".

11.   ASSET FORFEITURE AND FINANCIAL ACCOUNTABILITY:

A.    The defendant agrees to forfeit all interests in the
following property that facilitated the defendant's offense,
including but not limited to the following specific property:

(1)   2000 Honda Accord, green in color, 4 door, VIN:
JHMCG5670YC032577;

(2)   2004 Suzuki Motorcycle, VIN:  JSIGW71A742104566;

(3)   $2,000 in U.S. currency seized from PORCHAY's safety
deposit box;

(4)   $191,612.00 in U.S. currency; and

(5)   2004 Cadillac Escalade, seized in Washington in January
2007

Defendant warrants that defendant is the sole owner of all of the
property listed above, and agrees to hold the United States, its
agents and employees harmless from any claims whatsoever in
connection with the seizure or forfeiture of property covered by
this agreement. The defendant further agrees that forfeiture of
assets described above shall not be counted towards satisfaction
of any special assessment, fine, restitution, or any other
penalty the court may impose.

10

B.   The defendant agrees not to assist any other individual in contesting the forfeiture of the assets described above and agrees that there was reasonable cause to seize such items.   The defendant also agrees to prevent the disbursement of any and all assets described above if said disbursements are within the defendant's direct or indirect control.

C.   The defendant further agrees to waive all interest in, and consents to the forfeiture of, any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.   The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that he understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time his guilty plea is accepted.

D.   The defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including

11

that the forfeiture constitutes an excessive fine or punishment.
The defendant agrees to take all steps as requested by the United
States to pass clear title to forfeitable assets to the United
States, including, but not limited to, the execution of the
Consent Decree of Forfeiture and the completion of any other
legal documents required for the transfer of title to the United
States. Defendant acknowledges that all property covered by this
agreement is subject to forfeiture as proceeds of illegal
conduct.

12. **DOUBLE JEOPARDY AND SUCCESSIVE PROSECUTION**: The United
States Attorney for the Eastern District of Arkansas will bring
no further charges against the defendant for any acts or conduct
arising out of the events described in the Indictment, which is
the subject of this action, unless the Defendant breaches this
Agreement.

13. **RECORDS**: The defendant hereby waives all rights,
whether asserted directly or by a representative, to request or
receive from any department or agency of the United States any
records pertaining to the investigation or prosecution of this
case, including without limitation any records that may be sought
under the Freedom of Information Act, 5 U. S. C. Section 552, or
the Privacy Act of 1974, 5 U. S. C. Section 552a.

14. **CIVIL CLAIMS BY THE GOVERNMENT**: Except to the extent
otherwise expressly specified herein, this Agreement does not bar

12

08-May-2009 10:13 AM U S Attorney s Office, ED/AR 501-340-2728
Case 4:07-cr-00308-BRW Document 253 Filed 04/20/10 Page 17 of 31

13/18

or compromise any civil or administrative claim pending or that
may be made against the defendant, including but not limited to
tax matters.

15. **EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT:**

A. Defendant acknowledges and understands that if the
defendant violates any term of this Agreement, engages in any
further criminal activity prior to sentencing, or fails to appear
for any subsequent proceeding including sentencing, the United
States shall have, in addition to all other rights and remedies
otherwise available, the right to:

    (1) terminate this Agreement; or

    (2) proceed with this Agreement and

        (a) deny any and all benefits to which the
defendant would otherwise be entitled under the terms of this
Agreement; and/or

        (b) advocate for any sentencing enhancement that
may be appropriate.

B. In the event the United States elects to terminate this
Agreement, the United States shall be released from any and all
obligations hereunder. The defendant acknowledges and
understands that the agreement of the United States to dismiss
any charge is conditioned upon final resolution of this matter.
If this Agreement is terminated or if the defendant's conviction
ultimately is overturned, then the United States retains the

13

right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this Agreement.

C. The defendant hereby knowingly and voluntarily waives any defense based upon the applicable statute of limitations and/or the Speedy Trial Act, for any charges reinstated or otherwise filed against the defendant as a result of defendant's breach of this Agreement, so long as the United States initiates any otherwise time barred action within one year of termination or revocation of this Agreement.

D. In the event that the Agreement is terminated or if the defendant successfully moves to withdraw his plea, any statement made by the defendant in negotiation of, or in reliance on this Agreement:

(1) may be used to cross examine the defendant should he testify in any subsequent proceeding; and/or

(2) any leads derived therefrom may be used by the United States.

The defendant waives any and all rights to the contrary and shall assert no claim under the United States Constitution, any statute, or any rule of procedure or evidence to the contrary.

16. **PARTIES**: This Agreement is binding only upon the United States Attorney's Office for the Eastern District of Arkansas and the defendant. It does not bind any United States Attorney outside the Eastern District of Arkansas, nor does it

14

bind any other federal, state or local prosecuting,
administrative, or regulatory authority.

17. **MISCELLANEOUS**:

A. Modification: No term or provision contained herein may
be modified, amended or waived except by express written
agreement signed by the party to be bound thereby.

B. Headings and Captions: Subject headings and captions are
included herein for convenience purposes only and shall not affect
the interpretation of this Agreement.

C. Waiver: No waiver of a breach of any term or provision of
this Agreement shall operate or be construed as a waiver of any
subsequent breach or limit or restrict any other right or remedy
otherwise available.   Any waiver must be expressly stated in
writing signed by the party to be bound thereby.

D. Rights and Remedies Cumulative: The rights and remedies of
the United States expressed herein upon any breach hereunder by the
defendant are cumulative and not exclusive of any rights and
remedies otherwise available to the United States in the event of
any breach of this Agreement by defendant.

E. Joint Negotiation: This Agreement has been mutually
negotiated by the parties hereto, and any uncertainty or ambiguity
existing herein shall not be interpreted against any party by
reason of its drafting of this Agreement, but instead shall be

15

interpreted according to the application of the general rules of interpretation for arms length agreements.

18.  **NO OTHER TERMS**:

This document completely reflects all promises, agreements and conditions made between the parties, constitutes the entire agreement between the parties and supersedes any and all prior agreements or understandings between the parties, oral or written, with respect to the subject matter hereof.

19.  **APPROVALS AND SIGNATURES**:

A.  **DEFENDANT**:  The Defendant has read this Agreement and carefully reviewed every part of it with his attorney.  The defendant understands and voluntarily agrees to the terms and condition of this Agreement.  Further, the defendant has consulted with his attorney and fully understands his/her rights with respect to the provisions of the United States Sentencing Guidelines which may apply to this case.  No other promises or inducements have been made to the defendant, other than those expressly contained in this Agreement.  In addition, no one has threatened or forced the defendant in any way to enter into this Agreement.  Defendant further acknowledges that defendant has entered into this Agreement, consciously and deliberately, by defendant's free choice, and without duress, undue influence or otherwise being forced or compelled to do so, and this Agreement constitutes the legal, valid and binding obligation of the defendant, fully

16

enforceable against defendant in accordance with its terms. Finally, the defendant is satisfied with the representation of his attorney in this case.

B. **DEFENSE COUNSEL**: Defense counsel acknowledges that she is the attorney for the defendant, and that she has fully and carefully discussed every part of this Agreement with the defendant. Further, defense counsel has fully and carefully advised the defendant of the defendant's rights, of possible defenses, and of the consequences of entering into this Agreement, including the possible consequences of not complying with this Agreement. To counsel's knowledge, the defendant's decision to enter into this Agreement is an informed and voluntary decision.

DATED this _____*13th*_____ day of **February**, 2007.

TIM GRIFFIN
United States Attorney

By: Angela S. Jegley
Assistant United States Attorney
Post. Office Box 1229
Little Rock, Arkansas 72203
501/340-2600

17

DEFENDANT
HAROLD KELLEY

ATTORNEY FOR DEFENDANT
SHARITA BLACKNALL

```
 1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF ARKANSAS
 2                      WESTERN DIVISION

 3   UNITED STATES OF AMERICA,

 4                    Plaintiff,

 5      v.                               No. 4:07CR00308 WRW

 6   JACKIE E. PORCHAY,                  December 15, 2009
                                         Little Rock, Arkansas
 7                    Defendants.

 8           EXCERPT FROM TRANSCRIPT OF TRIAL,
                TESTIMONY OF HAROLD KELLEY
 9         BEFORE THE HONORABLE WILLIAM R. WILSON,
            UNITED STATES DISTRICT JUDGE, and a jury
10
     APPEARANCES:
11
     On Behalf of the Government:
12
        MS. JANE DUKE, U.S. Attorney
13      MR. PATRICK C. HARRIS, Assistant U.S. Attorney
           United States Attorney's Office
14         Post Office Box 1229
           Little Rock, Arkansas   72203-1229
15
     On Behalf of Defendant Jackie E. Porchay:
16
        MR. LARRY E. JARRETT, Attorney at Law
17         888 South Greenville, Suite 139
           Richardson, Texas   75081
18

19

20

21

22

23

24      Proceedings reported by machine stenography and displayed
     in realtime; transcript prepared utilizing computer-aided
25   transcription.
```

1    [Excerpted here:]

2         (Jury not present.)

3              THE COURT:  What's the issue?

4              MR. JARRETT:  Harold Kelley, Judge.  Mr. Kelley is out

5    in the hold here, and we have been told by the prosecutors that

6    he is going to be called as the next witness.  We believe he is

7    going to invoke his Fifth Amendment rights, and we thought that

8    we would do that outside the presence of the jury.

9              MR. HARRIS:  Your Honor, I know he has the right to

10   invoke Fifth and not answer questions that incriminate him.  He

11   does not, however, have the right to refuse to answer questions

12   that don't incriminate him.  All I am going to do is inquire

13   about matters that don't incriminate him, such as:  He pled

14   guilty; he is in jail; he was indicted; where he was; the money

15   that was found, he has already admitted was his; the Suzuki, he

16   has already filed a statement saying it was his.  None of those

17   things are going to have anything to do with incriminating him

18   after he has pled guilty.  So nothing --

19             THE COURT:  Objection overruled.  Exception saved.

20        You started to say --

21             MR. HARRIS:  No.

22             THE COURT:  Exception saved for the defendant.

23        Bring the jury in.

24        (Jury enters the courtroom.)

25             THE COURT:  Next witness.

1          MR. HARRIS:  Harold Kelley, Your Honor.

2          MR. JARRETT:  Your Honor, we would object.

3          THE COURT:  Overruled.  Exception saved.

4      Mr. Kelley, if you would come around please.

5          **HAROLD KELLEY, GOVERNMENT'S WITNESS, DULY SWORN**

6          THE WITNESS:  At this time, Your Honor, I would like to

7   take my Fifth Amendment right.

8          THE COURT:  All right.  What says the prosecution?

9          MR. HARRIS:  I will just ask him questions that will

10  not incriminate him.

11         THE WITNESS:  Your Honor --

12         MR. JARRETT:  Your Honor, the witness has invoked his

13  Fifth Amendment rights in front of the jury.  We believe that

14  that's prejudicial to Ms. Porchay.  We would ask that the

15  witness be allowed to be excused.

16         THE COURT:  The prosecution has assured me that the

17  questions asked will not incriminate him, and I am going to

18  overrule the objection and save the exception.

19                      DIRECT EXAMINATION

20  BY MR. HARRIS

21  Q    What is your name, please?

22  A    Plead the Fifth.  I have no answer.

23  Q    Is it true your name is Harold Kelley?

24  A    I have no answer.

25  Q    Is it true that you pled guilty in February of 2007 to --

1    A    I have no answer.

2    Q    Will you wait?  This lady is trying to get us all.  Will

3    you wait until I get through to answer?

4        Is it true you pled guilty February 2007 to drug

5    conspiracy?

6        Is it true that you are in federal prison serving a

7    188-month sentence?

8        MR. JARRETT:  Your Honor, again, we would invoke --

9    state to the Court we would object.  The witness has indicated

10    that he is pleading the Fifth.  We believe that this is

11    extremely prejudicial in front of the jury for Ms. Porchay.  We

12    would ask for a mistrial.

13        THE COURT:  The law is clear.  Overruled.  The law is

14    clear that a person can invoke the Fifth Amendment only if the

15    answer would tend to incriminate him, and I -- so I rule he has

16    got to answer, but he is apparently not going to answer.

17        So I am excusing the jury for the time being.  We will call

18    you back shortly.  Don't start making up your mind.  Don't talk

19    about the case.

20        (Jury exits the courtroom.)

21        THE COURT:  It appears to me that these questions do

22    not ask for answers that would tend to incriminate the witness,

23    so I am inclined to find him in contempt of court for failing to

24    answer these particular questions.  I understand that you

25    represent this witness; is that correct?

1          MR. JARRETT:  That is correct, Your Honor.

2          THE COURT:  Do you want to state why -- how this would

3   possibly tend to incriminate him, stating his name?

4          MR. JARRETT:  Your Honor, we believe that the Fifth

5   Amendment does not go into what questions would or would not

6   incriminate a person; that a person has the absolute right,

7   based upon the Constitution, to not answer any questions,

8   regardless of whether -- if they don't incriminate him.  He

9   believes that the questions tend to incriminate him.  He has an

10  absolute right to refuse.

11         THE COURT:  I think it has got to be colorable that

12  they would tend to incriminate, and I don't see how the

13  questions asked would possibly incriminate him.  And like I say,

14  I think it has to be a colorable claim of the Fifth, and I think

15  he is taking it without any basis.

16         All right.  What does the prosecution -- what is your

17  position on what's to be done now?

18         MR. HARRIS:  I would like to ask my questions that will

19  not incriminate him.  If he chooses not to testify because he

20  doesn't want to, that's fine, but I want to be able to ask my

21  questions.

22         THE COURT:  What good is it going to do?  He is not

23  going to answer anything.

24         MR. HARRIS:  He might change his mind.  I don't know.

25         THE COURT:  State the questions.

1       MR. HARRIS:  Name, pled guilty to drug conspiracy -- do
2  you want me to ask them or just state them?
3       THE COURT:  Just state them in the record, and I will
4  ask him if he is going take the Fifth with respect to each one
5  of them.
6       MR. HARRIS:  If he is serving 188 months in Federal
7  prison.
8       THE COURT:  A little slower.
9       MR. HARRIS:  If he was indicted in March '06.  If he
10  was released to 10005 Bradley on electronic monitoring.  If his
11  release on electronic monitoring also included being restricted
12  to Arkansas.  If he signed a plea agreement in which he said he
13  is the sole owner of the 2004 Suzuki motorcycle.  $191,000 found
14  in the search of April 21st of the 10005 Bradley Street address.
15       THE COURT:  Are you saying he signed an affidavit
16  saying it was solely his?
17       MR. HARRIS:  He did sign a plea agreement saying it was
18  solely his.  And at a plea and at a sentencing hearing before
19  Judge Holmes, he said that it was his and that he is the sole
20  owner.  I would ask if he did that, and I would ask him if his
21  presentence report states that he admitted to 12 trips to Dallas
22  to bring back cocaine and that he didn't object to that at the
23  sentencing.  I would ask him if he assisted in setting up
24  Fred Coleman for arrest on February 15, 2006.  I would ask him
25  if --

1          THE COURT:  I remind everybody about the poker-face

2     rule.

3        Go ahead.

4          MR. HARRIS:  I would also ask him if he gave $30,000

5     for the Yukon.  I think that's all I would ask.  Oh, I would ask

6     him if he has ever claimed that money seized by the police was

7     the result of his insurance settlement before this trial.

8     That's all I would ask him.

9          THE COURT:  All right.  Are you going to take the Fifth

10     to each of those questions?

11          THE WITNESS:  Yes, sir, I am.

12          THE COURT:  All right.  What does the government

13     suggest now, if anything?

14          MR. HARRIS:  Just ask to hold him in contempt, and I

15     will file the necessary paperwork to have a hearing in his

16     proceeding.

17          THE COURT:  Should I hold him in contempt or cite him

18     in contempt?

19          MR. HARRIS:  How about citing and holding him in

20     contempt?

21          THE COURT:  I will cite him for contempt, and I will

22     decide later if it's contempt.

23          MR. HARRIS:  I will file the appropriate paperwork.

24          THE COURT:  You can take him away.

25          MR. JARRETT:  Your Honor, may I be heard?

1      THE COURT:  Just a minute.  Yes.

2      MR. JARRETT:  Again, we would reurge the Court to

3  declare a mistrial.  We think that Ms. Porchay has been placed

4  in an indefensible position to have a codefendant to come in and

5  plead the Fifth; not only a codefendant, but the evidence shows

6  a boyfriend/girlfriend relationship.  So the jury is going to

7  infer from that that Mr. Kelley is trying to protect

8  Ms. Porchay.  We can't defend against that.  Ms. Porchay has

9  been placed in an indefensible position.  We ask for a mistrial.

10  This hearing should have been held, and it is now being held,

11  outside the presence of the jury.  Initially, when the jury was

12  in here, we raised these issues, and we believe that the Court

13  should not have had Mr. Kelley take the Fifth in the presence of

14  the jury.

15      THE COURT:  Well, of course, you are his lawyer and he

16  chose to take the Fifth on things that he is not entitled to

17  take the Fifth on, in my opinion, and so that's a risk you run.

18  I don't know whether it's going to prejudice this defendant or

19  not.  I am -- it can cut either way.  But in any event, I have

20  done what I have done and I stand by it and the objection is

21  overruled.  Your motion for a mistrial is denied, but your

22  exception is saved.

23      All right.  You can take the witness now.

24      [Excerpt concluded.]

25

1                   C E R T I F I C A T E

2          I, Cheryl B. Nelson, Official Court Reporter, do hereby

3   certify that the foregoing is a true and correct transcript of

4   testimony excerpted from the proceedings held on December 15,

5   2009.

6

7   /s/ Cheryl B. Nelson, RPR, CRR, CCR    Date:  April 7, 2010
        United States Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25